Dimitry v. Pollock.

## MARIE ANNE DIMITRY *v.* GEORGE POLLOCK.

The written acknowledgment of the husband is not conclusive, as to third persons, of the amount of the dotal rights of the wife. The amount must be established contradictorily with them, and by conclusive proof.

The legal mortgage of the wife on the property of the husband, to secure her paraphernal rights, or for the reimbursement of her paraphernal funds paid to him, or applied to the discharge of his debts, only attaches from the date of such payment or application, or from the time when her paraphernal property was placed under his administration, or in his possession.

APPEAL from the District Court of the First District, *Buchanan, J.*

SIMON, J.* The facts of this case, are fully stated in the report of the first judgment rendered by this court, between the same parties found in 12 La. 296. This controversy originated in a rule upon the Sheriff alone, to show cause why the mortgages subsequent to that of the seizing creditors, Gasquet & Co., should not be released. This court said, that this could not be done in the absence of the subsequent mortgage creditors, and that they ought to be made parties. 6 La. 453.

In June, 1834, Gasquet & Co. took another rule on Dimitry's mortgagees, to show cause why their mortgages should not be released. This was terminated by a judgment of this court, recognizing the mortgage of Mad. Dimitry to be in full force, notwithstanding her renunciation, and ordering the rule to be discharged, but refusing to decree to her the proceeds of the sale of the property, inasmuch, as she was bound to pursue a particular order in discussing the property of her husband. 9 La. 585.

During the pendency of the second rule before this court, Miller, who, in February, 1834, had become the purchaser of the property, upon which the two parties, Gasquet & Co, and Mad. Dimitry, pretended to have their respective mortgages, paid the amount of his purchase to the seizing creditors, notwithstanding the appeal taken by the opponent, from the judgment overruling her opposition. This payment was made in consequence of Miller's not being a party to the rule, and of the appeal being considered as a devolutive one, only. In the mean time, Miller sold the property to Pollock, for the price of $8000.

In December, 1836, the present proceedings were instituted, for the purpose of causing the property sold by Miller to Pollock, to be seized and sold, by virtue of the plaintiff's legal mortgage, and of applying the proceeds of the sale, to the satisfaction of a judgment obtained by the plaintiff, against her husband, in 1834, in which, she is decreed to be entitled to recover of her said husband, the sum of *twenty-seven thousand dollars,* as the amount of her dotal

*This case was decided on a re-hearing.

and paraphernal rights, secured by a legal mortgage on her husband's property. Pollock called Miller in warranty, and the latter called Gasquet & Co., as his warrantors.

The defendant, Pollock, sued out an injunction, which was dissolved by the court below; but an appeal having been taken to this court, the injunction was reinstated, and the case was remanded for further proceedings, according to law, as the plaintiff *had failed to establish the amount by her claimed as her* dot, *by any other proof, but by the written acknowledgment of the husband, which cannot be taken as conclusive proof, as to third persons.* 12 La. 296.

The result of the second trial below, was a judgment dissolving the injunction for the sum of $3330, with interest, and making it perpetual, for the balance of the sum claimed by the plaintiff, in the executory process. A similar judgment was rendered in Pollock's favor, against Miller, but the latter's claim against Gasquet & Co. was rejected. From this judgment, Pollock and Miller appealed.

The District Judge gave judgment in favor of the plaintiff, for $3330, a balance due on the sum of $7000, being of opinion, that the plaintiff had satisfactorily proved her claim against her husband, for the said sum of $7000, only, although her judgment of separation gave her a much larger sum, and that she had received upon her judgment, three thousand six hundred and seventy dollars; and he accordingly decreed the sale of the property, for the balance.

The pleadings of all the parties defendant, (Miller, and Gasquet & Co., having adopted the defence set up by Pollock,) put in issue the renunciation by the plaintiff, of her legal mortgage, by which it is pretended that she is bound, as she never brought herself within the provisions of the act of the 27th March, 1835. It is further averred, that if the plaintiff has any prior mortgage, she can only exercise her right upon the proceeds of the sale, and not upon the property in the hands of the defendant; because, in answer to the rule above mentioned, she prayed that the proceeds might be paid over to her, in preference to the plaintiffs, Gasquet & Co., and the answer of Gasquet & Co. specially denies that

she has any general, or other mortgage, or any to be preferred to his. *The other grounds of defence need not be repeated.*

The view we have taken of the plaintiff's rights, as established by the evidence, brings us at once to the questions : 1st. What amount has she shown to be due to her by her husband, for her dotal and paraphernal property ? or, in other words, has the plaintiff sufficiently established, that she is entitled to recover the sum of $27,000, decreed to her by the judgment of separation ; and, if not entitled to the whole amount, to how much is she entitled ?

2d. What is the extent of her legal mortgage on the property of her husband, and from what time did it take its effect on the property in question ?

*First.* The judgment which the plaintiff obtained against her husband, for the sum of $27,000, embraces two sums: one of $7000, acknowledged by the husband in a written act, *to have been received by him on account of his wife, and as her dot;* and another sum of $20,000, being the amount of a loan for which she mortgaged her own property to the Bank of Louisiana, and which, it being alleged to have been paid over to her husband, she claimed as her paraphernal funds.

With regard to the sum of $7000, we may repeat here, that the record contains no evidence of its having been paid, except the acknowledgment of the husband. On the second trial, before the lower court, no other proof was adduced ; and we cannot conceive how the Judge, *a quo,* could allow her that amount, after what this court had said upon this point, in the judgment reported in 12 La. 296. There, this tribunal expressed the positive opinion, that "the claim of the wife, being expressly denied by the defendant, and it being alleged that she obtained her judgment by the consent of her husband, or his neglect to urge the proper pleas, the District Court ought to have required her to establish her demand contradictorily with the defendant, and by *conclusive proof.*" This court also said, that "the District Court had erred in being satisfied with the *prima facie* evidence resulting from the judgment against her husband ;" and the case was remanded, *to afford her the opportunity of producing the requisite proof.* Here again, no further proof has been produced, and as we

have no reason to be dissatisfied with our former opinion, we think the District Judge erred in not rejecting this part of her claims.

As to the sum of $20,000: it is true, that it is shown that she mortgaged her own property to the Bank of Louisiana, for a loan of that amount; but the evidence only establishes, that $10,965 were actually paid over to the husband, or applied to the payment of his debts. Now, supposing that she could claim this amount from her husband, as paraphernal funds, although it is not shown that she ever reimbursed the amount of the loan to the Bank of Louisiana, out of her own funds, or that it was satisfied out of the property mortgaged, by the proceeds of the sale thereof, her legal mortgage would only attach on the property of her husband, from the time that he received her money, for the sum of $7295, after deduction of the $360 which she has already received.

*Second.* But does her legal mortgage, for the security of the said balance, bear upon the property in question? Does it attach upon it, in preference to the special mortgage of Gasquet & Co.? This question does not appear to have ever been brought to the consideration of this court. The facts upon which it is based, though clear and positive, were, we believe, overlooked by the counsel, on the first and second trials before this court, although it was noticed by the Judge, *a quo*, in his first judgment.

The mortgage to the Bank of Louisiana was executed on the 5th of December, 1832, and it was after this period that the husband received a part of the loan on the checks of his wife. Several of those checks are even dated so late as April, May, and June, 1833, and until then, the money had remained in the possession, and under the control of the wife. If the sum loaned was her paraphernal funds, it was under her administration; and it is well known, that the legal mortgage that a married woman has upon the estate of her husband to secure her paraphernal rights, only takes effect from the time that they have been placed in the possession, or under the administration of the husband, or from the day on which he received her paraphernal funds. Now, the mortgage to Zoits, subsequently transferred to Gasquet & Co., was executed and recorded on the 26th of November, 1832, which is *nine days* before the date of the mortgage to the Bank of Louisiana, and according to the evidence, *sixteen days* before the date of the first check,

and nearly *seven months* before that of the last check. It is clear, therefore, that the plaintiff's mortgage could not *retroact* on property previously alienated or mortgaged; and that the special mortgage, by virtue of which the property was seized, and afterwards adjudicated to Miller, was to be satisfied in preference to the pretended legal one of the plaintiff.

Under all these considerations, we conclude, that there having remained nothing more due by Miller, on the amount of the adjudication, to discharge the mortgages subsequent to that of the suing creditor, he was legally entitled to a release of the said posterior mortgages, (Code Pract., art. 708;) that the seizure and sale of the property in the possession of the defendant, was illegally and improperly applied for; and that the injunction obtained by said defendant ought to be perpetuated.

It is, therefore, ordered and decreed, that the judgment of the District Court be annulled, and reversed; that the plaintiff's application for an order of seizure and sale of the property purchased by Miller, and by him sold to Pollock, be rejected; and that the injunction sued out by the defendant and appellant be made perpetual; the plaintiff and appellee paying the costs in both courts.

*Canon*, for the plaintiff.

*Roselius*, for the defendant, and Miller, cited in warranty.

*Wharton* and *Eustis*, for Gasquet & Co., warrantors.